UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFRICA GROWTH CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. (BAH) 17-2469 |
| REPUBLIC OF ANGOLA, *et al.*, | Chief Judge Beryl A. Howell |
| Defendants. | |

**MEMORANDUM OPINION**

Africa Growth Corporation ("AFGC"), a U.S.-based, publicly-listed corporation which, through its subsidiaries, builds and manages apartments in Angola's capital city, Luanda, initiated this suit against five Angolan government officials and the Republic of Angola to recover damages for an alleged series of brazen fraudulent actions culminating in the outright seizure and ongoing occupation of AFGC's properties by a General of the Angolan military, his son, and their "heavily-armed security detail." Angolan courts have enjoined two of the defendants, Angolan General Antonio Francisco Andrade ("General Andrade"), and his son, Angolan Army Captain Miguel Kenehele Andrade ("Captain Andrade"), from occupying AFGC's properties—but to no avail. General Andrade and Captain Andrade have allegedly claimed "immunity" from these Angolan court orders, and the police, for their part, have been of limited service in enforcing the orders, allegedly because the police have been directed by none other than General Andrade's own daughter, Angolan State Prosecutor Natasha Andrade Santos ("Prosecutor Andrade"), not to enforce the Angolan court's orders.[1]

---

[1] The plaintiff alleges in the Complaint that the defendants General Francisco Higino Lopes Carneiro ("Governor Carneiro"), General Joao Maria de Sousa ("Attorney General de Sousa"), and General Andrade are "immune from prosecution in Angolan courts." Compl. ¶¶ 8, 9, 10.

1

The issue now before the Court is whether default judgment should be entered against Angola and the five Angolan government officials due, with respect to Angola, its eight-month delay in responding to plaintiff's complaint, and with respect to the individual defendants, their continuing failure to respond. The plaintiff filed the Complaint, ECF No. 1, on November 15, 2017, and effectuated service on the defendants, on December 26, 2017, by sending a copy of the summons and complaint and a notice of suit, pursuant to the procedure for service upon foreign states established by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(3). *See* Return of Service/Affidavit, ECF No. 20.

An answer to plaintiff's Complaint was due by February 24, 2018, for any defendant on whom service was properly made, which, as discussed below, is at issue for the individual defendants. No answer was timely filed. Shortly after this deadline, on February 27, 2018, the plaintiff filed an Affidavit in Support of Default, ECF No. 21, and the Clerk of Court entered Default, ECF No. 22, on March 2, 2018. The plaintiff then, on March 15, 2018, filed a Motion for Default Judgment ("Pl.'s Mot."), ECF No. 23. Nearly six months later, on September 4, 2018, Angola filed a Motion to Set Aside Default ("Def.'s Mot."), ECF No. 28. For the reasons set forth below, the plaintiff's motion for entry of default judgment is denied as to all defendants, and Angola's motion to set aside the default entered by the Clerk of the Court is granted.

**I.     BACKGROUND**

AFGC operates in Angola through three subsidiaries: AGPV Lda ("AGPV"), Illico Lda ("Illico"), and Maximilio Lda ("Maximilio") (collectively, "AFGC's Subsidiaries"). Compl. ¶ 31, 35. As alleged in the Complaint, beginning in January 2015, AFGC invested in four "high-end apartment complexes" in Luanda that were managed by AFGC's Subsidiaries. *Id.* ¶¶ 2, 27,

29.[2]  According to the plaintiff, the defendants' conspiracy to convert AFGC's Subsidiaries' assets began in October 2016 when General Andrade "fraudulently prepare[d] Powers of Attorney, which purported to appoint one of [General Andrade's] associates as the shareholder representative of two of Illico's parent companies, [AGPV] and [Maximilio], but in truth and in fact, were forged at the direction of General Antonio Andrade."[3]  *Id.* ¶ 35; *see also* Decl. of Brenton Kuss ("Kuss Decl.") ¶ 13, ECF No. 23-2.  General Andrade next had the "current and lawful director and *Gerente* (General Manager) of Illico" dismissed, and the General himself "unlawfully appoint[ed]" "as the director and *Gerente* of Illico, with signature authority over the Illico bank accounts."  *Id.* ¶ 36.  The plaintiff claims these acts of "corporate fraud" were not immediately discovered because "they were not properly recorded and documented in the official corporate registry of Angola, which is administered by the Angolan Guichet Unico de Empresa ("GUE"), a division of the Angolan Ministry of Justice."  *Id.* ¶ 37.

Once in control of Illico's bank accounts, General Andrade allegedly transferred money from Illico to his own privately-owned companies.  *Id.* ¶ 40.  The plaintiff alleges that he "then intimidated the AFGC staff with threats of violence and demanded that they recognize him as the owner and managers of" AFGC's assets, and "demanded that the local AFGC staff cut off all contact with AFGC senior management going forward."  *Id.* ¶ 41.  In the ensuing power struggle, AFGC claims it was able to briefly reinstall its lawful director and *Gerente* of Illico in July 2017, but that General Andrade conspired with his son, Captain Andrade, his daughter, Prosecutor

---

[2] The record is unclear whether construction of the fourth apartment building has been completed.  The CEO of AFGC states that AFGC's Subsidiaries "acquired title to two residential real estate properties, consisting of three buildings (named "Isha 1", "Isha 2" and "Pina") that were divided into 64 apartments and 7 offices," and that "[f]ollowing the acquisition of Isha 1, Isha 2 and Pina, AFGC began the construction of a fourth building (named "Isha 2.5"), which contained another 40 apartments."  Decl. of Brenton Kuss ("Kuss Decl.") ¶¶ 5, 7, ECF No. 23-2.
[3] The plaintiff claims that AGPV and Maximilio are both parent companies of Illico, Compl. ¶ 35, whereas Angola claims that AGPV is the parent company of both Maximilio and Illico, Def.'s Reply at 5.  Angola also claims that AGPV is owned by the British Virgin Islands company ABV Holding Ltd, which is in turn owned by the Bermuda company Africa International Capital Ltd, which, finally, is owned by AFGC.  *Id.*

3

Andrade, and GUE to have himself unlawfully reappointed, in August 2017, as director and *Gerente* of AFGC's Subsidiaries, and moreover, amended AFGC's Subsidiaries' bylaws "to name himself as the sole legal representative and signatory," thereby "assum[ing] full and complete control" of AFGC's Subsidiaries. *Id.* ¶ 46-50.

When AFGC representatives arrived in Angola in August 2017 to reassert control over AFGC's Subsidiaries' properties, they encountered General Andrade's "heavily-armed security detail," which forced them "to withdraw from their own properties." *Id.* ¶¶ 51-56. The plaintiff alleges that "the Angolan police refused (at the express direction of [Prosecutor Andrade]) to take any action," "thereby aiding and supporting the ongoing conspiracy … to deprive AFGC of lawful ownership and possession of" its properties. *Id.* ¶ 58. As of the filing of plaintiff's Complaint, the "heavily-armed security detail continue[d] [] to patrol the buildings … with exposed AK 47 assault rifles." *Id.* ¶ 61.

The plaintiff's allegations also implicate the Attorney General of Angola, General Joao Maria de Sousa ("Attorney General de Sousa"), who allegedly conspired with Prosecutor Andrade "to prevent legitimate law enforcement action from being taken in support of AFGC," *id.* ¶ 81, and the Governor of the Province of Luanda, General Francisco Higino Lopes Carneiro ("Governor Carneiro"), who allegedly acted "in furtherance of the unlawful conspiracy," *id.* ¶ 99, by signing and approving "the fraudulent transfer of the surface rights" to AFGC's Subsidiaries' properties "through a transfer of title from Illico to Prosecutor Natasha Andrade," *id.* ¶ 97.

Finally, the plaintiff claims that Angola itself "has aided and abetted in the unlawful conspiracy by enabling [General Andrades, Captain Andrade, and Prosecutor Andrade (the "Andrades")] to convert AFGC's property through acts of fraud, illegally asserted control, and

4

intimidation," and "has fostered an expectation of total impunity on the part of the [Andrades], who have had no reason to fear they will be brought to judgment in Angola for their bad acts." *Id.* ¶ 120.

The plaintiff apparently obtained from the Angolan Provincial Court "a written verdict and opinion, dated November 23, 2017 (the "November 23 Order")," in which "the Angolan Court specifically held" that AFGC's Subsidiaries' assets "had been taken 'unlawfully and by exercising violence' against AFGC's representatives in Angola." Pl.'s Mem. Supp. Mot. Default Judgment ("Pl.'s Mem.") at 13, ECF No. 23-1. Nonetheless, "the Angolan government took no action to enforce the November 23 Order." *Id.* Accordingly, "[o]n December 19, 2017, an amended verdict and decision of the Angolan Provincial Court (the "December 19 Order") was issued, which reaffirmed the unlawful and violent nature of the [Andrades'] conduct and ordered the Angolan police to return to the [properties] to evict the [Andrades]." *Id.* at 14. Allegedly, the police enforced the December 19 Order, but "once the police departed," the Andrades returned. *Id.* at 14.

Thus, as of March 15, 2018, the plaintiff alleges that it "remains: (i) without possession or control of [AFGC's Subsidiaries' properties]; (ii) without recorded and secured legal title to [AFGC's Subsidiaries' properties] returned and cleared of all fraudulently obtained encumbrances on title; (iii) without possession or control of [AFGC's Subsidiaries]; (iv) without possession or control of the corporate bank accounts of [AFGC's Subsidiaries]; and (v) without the ability to collect rental income from [AFGC's Subsidiaries' properties]. *Id.* at 14. In the ten-count Complaint, alleging expropriation in violation of International Law (Count I), violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), (d) (Counts II, III), conspiracy to commit fraud and conversion, and conversion (Count IV, VII),

tortious interference with contract (Count V), defamation (Count VI), accounting (Count IX), and an Action to Impose Constructive Trust (Count X), AFGC seeks "damages in excess of US$55 million owed to AFGC arising from Defendants' unlawful conspiracy, expropriation, and outright theft of AFGC's properties and rental income in Angola." Compl. ¶ 1.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a); *see* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2018) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a)."). "[A]n entry of default is merely a formal matter and does not constitute the entry of judgment." *Id*.

Rule 55 further provides that a "court may set aside [a clerk's] entry of default for good cause." FED. R. CIV. P. 55(c). The D.C. Circuit has made clear that courts, when exercising their discretion under Fed. R. Civ. P. 55(c), should consider "'whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious.'" *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (quoting *Keegel v. Key West & Caribbean Trading*

*Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980)).  The three factors articulated in *Keegel* are not exclusive, however, as the "good cause" standard of Rule 55(c) "is designed to empower courts to consider the equities that specially arise in a given case." *Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958, 966 (D.C. Cir. 2016).  The D.C. Circuit has also "stressed a foreign sovereign's interest—and [the Court's] interest in protecting that interest—in being able to assert defenses based on its sovereign status," *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006), because "'[i]ntolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and undermine the State Department's continuing efforts to encourage foreign sovereigns generally to resolve disputes within the United States' legal framework,'" *id.* at 838-839 (quoting *Practical Concepts Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987)).

## III.  DISCUSSION

Notwithstanding the fact that Angola has stepped forward to litigate the extraordinary claims alleged in this lawsuit, the plaintiff persists in pursuit of a default judgment.  Angola counters that the *Keegel* factors, and its status as a sovereign nation, militate against an entry of default judgment.  Although Angola's default was surely willful, *see infra* in Part III.B, the Court finds that all other relevant factors weigh in favor of setting aside the entry of default against Angola.

As for the five individual defendants named in the Complaint: the three Andrades, plus Attorney General de Sousa and Governor Carneiro (collectively, the "Individual Defendants"), none has yet appeared or made any filings to set aside the entry of default, to contest the Court's jurisdiction, or otherwise.  Nonetheless, the plaintiff has failed to satisfy its burden to make some

*prima facie* showing of the Court's jurisdiction over the individuals. Therefore, the plaintiff's motion for a default judgment against the Individual Defendants must be denied.

### A. The Plaintiff Has Not Established Personal Jurisdiction over the Individual Defendants

Before entering default judgment against a defendant, the Court is obligated to assure itself of personal jurisdiction. *Mwani*, 417 F.3d at 6 ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."). In this regard, the plaintiff seeking a default judgment bears the burden to make a *prima facie* showing that the Court has personal jurisdiction over the Individual Defendants. *Id* at 7. Effective service of process is essential to establishing the Court's personal jurisdiction. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) ("Under the federal rules enacted by Congress, federal courts lack the power to assert personal jurisdiction over a defendant 'unless the procedural requirements of effective service of process are satisfied.'" (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002))).

The plaintiff purports to have served the Individual Defendants according to the procedure established by the FSIA for serving a "foreign state," which means, in this case, via the Angolan Minister of Foreign Affairs. *See* 28 U.S.C. § 1608(a)(3). This was, however, the wrong procedure to use. The FSIA defines a "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). In turn, the FSIA defines "agency or instrumentality of a foreign state" as "any entity" (1) "which is a separate legal person, corporate or otherwise, and" (2) "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof" and (3) "which is neither a citizen of a State of the United States … nor created under the laws of any third country." *Id.* § 1603(b).

The Supreme Court has clarified that the term "agency or instrumentality" in the FSIA does not refer to natural persons, such as individual government officials. *See Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) ("Reading the FSIA as a whole, there is nothing to suggest we should read 'foreign state' in § 1603(a) to include an official acting on behalf of the foreign state, and much to indicate that this meaning was not what Congress enacted."). Therefore, in the instant case, while Angola is indisputably a "foreign state," the Individual Defendants are not. Service on the Individual Defendants according to the FSIA procedure for serving foreign states, rather than the procedure set out in Fed. R. Civ. P. 4(f) for serving individuals in foreign countries, does not constitute proper service on the Individual Defendants.

Personal jurisdiction over the Individual Defendants fails for a second reason as well, argues Angola, because the individual defendants do not have the necessary "minimum contacts" with the District of Columbia. Def.'s Mem. Supp. Mot. Set Aside Default Entry ("Def.'s Mem.") at 2 n.2, ECF No. 28-1 (citing *Williams v. Romarm, S.A.*, 756 F.3d 777, 783-84 (D.C. Cir. 2014)).[4] Angola notes that "the only contact with the District of Columbia alleged in the Complaint pertains to a single Defendant—[Captain Andrade]—and consists only of his allegedly sending a letter to the Securities and Exchange Commission, supposedly copied to others[,]" but that "[n]o contacts with this District are alleged with respect to any of the other four individual Defendants." *Id.*

---

[4] The memoranda filed in support of the motions before the Court are docketed twice and, to simplify citation, only one of the duplicate memoranda is referenced. Angola's identical Memoranda in Support of its Motion to Set Aside Default, ECF No. 28-1, and in Opposition to Plaintiff's Motion for Default Judgment, ECF No. 29, will be referenced only by the memorandum at ECF No. 28-1. The plaintiff's identical Reply in Support of its Motion for Default Judgment, ECF No. 33, and Memorandum in Opposition to Angola's Motion to Set Aside Default, ECF No. 34, will be referenced by only the memorandum at ECF No. 33. Finally, Angola's identical Reply in Support of its Motion to Set Aside Default, ECF No. 35, and Surreply in Opposition to Plaintiff's Motion for Default Judgment, ECF No. 36, will be referenced only by the memorandum at ECF No. 35.

Angola noted the plaintiff's defective service of process, the lack of "minimum contacts," and the Court's resulting lack of personal jurisdiction over the Individual Defendants in its briefing to set aside entry of default, *see* Def.'s Mem. at 2 n.2, but AFGC has barely acknowledged these arguments, much less addressed them in its briefing, *see* Pl.'s Reply Supp. Mot. Default Judgment ("Pl.'s Reply") at 4, ECF No. 33 (insisting that "AFGC effected service of process on Angola and the other defendants … in strict compliance with the FSIA's provisions for service of process upon a foreign state," but not addressing Angola's argument that the Individual Defendants are not foreign states pursuant to the FSIA). Thus, because service of process pursuant to the FSIA was clearly defective, and because the plaintiff has offered no alternative theory or explanation as to how the Court would have personal jurisdiction over the Individual Defendants, final default judgment may not be entered against the Individual Defendants. The plaintiff will be directed to show cause why these Individual Defendants should not be dismissed.

### B. Angola Has Satisfied the *Keegel* Factors

Angola has made an adequate showing that entry of default should be vacated in this case and the plaintiff's motion for default judgment denied. Each of the *Keegel* factors are addressed *seriatim*.

#### 1. *Angola's Default Was Willful*

The first *Keegel* factor requires consideration of whether the default was willful. Supporting a claim that Angola's default was willful is the simple fact than eight months lapsed between Angola receiving service of process, on December 26, 2017, and showing up to litigate the matter, by filing a motion to set aside the entry of default, on September 4, 2018. As the plaintiff notes, Angola has experience litigating before this Court, including with the same legal counsel retained for the instant matter, such that "Angola cannot claim lack of understanding

regarding the legal process or difficulties or delays in selecting legal counsel." Pl.'s Reply at 7. The plaintiff argues that these facts alone are sufficient to infer willful default. Angola contends, however, that it "did not intend to willfully default," Def.'s Mem. at 28, and explains that the delay was "'[d]ue to the need to secure the necessary approvals' for the Angolan Government to retain counsel," Def.'s Reply Supp. Mot. Set Aside Default Entry ("Def.'s Reply") at 14, ECF No. 35 (citing Decl. of Eduarda Passos de Carvalho Rodrigues Neto ("Rodriques Neto Decl.") ¶ 4, ECF No. 35-1).

As Angola notes, uncertainties around the willfulness of default are frequently resolved in the defaulting party's favor, even where that party's explanation had slim or no supporting evidence. *See, e.g., Biton v. Palestinian Interim Self Government Authority*, 233 F. Supp. 2d 31, 33 (D.D.C. 2002) (finding default not willful because, even though "[d]efendants' explanations for their delay sound [] like hollow excuses," and defaulting party had "supplied no specifics—by proffer, affidavit, or otherwise—to support [its] claims," but nonetheless "accord[ing] the defendants the benefit of the doubt"); *Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389, 394 (D.D.C. 2005) (finding default not willful even though the defaulting party had "not produced any evidence corroborating" its explanation, leaving the court "with a doubt (albeit a very strong doubt)" about the defendant's willfulness). Here, by contrast, Angola has supported its explanation—that Angola needed additional time to secure approvals within the Angolan Government—with a sworn affidavit from the Deputy Attorney General of Angola. *See generally* Rodriques Neto Decl.

Angola's explanation and accompanying affidavit, however, do not save Angola from a finding of willful default. Angola's eight-month delay, from a nation with experience litigating in this district is inexcusable. *See, e.g.*, *de Sousa v. Embassy of Republic of Angola*, 229 F. Supp.

11

3d 23 (D.D.C. 2017); *de Sousa v. Embassy of the Republic of Angola*, 267 F. Supp. 3d 163 (D.D.C. 2017); *Phoenix Consulting, Inc. v. Republic of Angola*, 35 F. Supp. 2d 14 (D.D.C. 1999). The consequence of a party failing timely to participate in pending litigation against it, ignoring the deadlines set by the general rules governing federal judicial proceedings and the Court, and using its own timetable instead, shows disrespect for the Court and the legal system in which the Court operates, and results in delays in resolving cases to the detriment of the judicial system and other litigants. *See Pakter v. Janou Pakter, LLC*, 2018 U.S. Dist. LEXIS 56869, at *8 (S.D.N.Y. Apr. 3, 2018) (noting that "allowing a case to languish for nearly nine months … is deeply disrespectful to the Court [and] opposing counsel"). Angola's delay is willful.

A finding of willful default, however, is not dispositive. A Court may set aside an entry of default even where a defendant defaulted willfully, where other factors weigh in favor of granting vacatur. *See Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 81-82 (D.D.C. 2011) (vacating entry of default despite finding defendants' default to be willful where the "Court is now convinced that [defendants] are truly committed to litigating this matter" and the other *Keegel* factors weigh in favor of vacatur); *Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 130 (D.D.C. 2010) (setting aside entry of default even though defendant's default was "at least to some degree, willful"); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 108-09 (D.D.C. 2009) (finding defendants' default to be willful and part of a "deliberate litigation strategy," but nevertheless granting vacatur of the entry of default); *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 10 n.5 (D.D.C. 2005) (setting aside the entry of default despite finding Sudan's delay to be "at least somewhat willful").

## 2. An Order to Set Aside the Entry of Default Would Not Prejudice the Plaintiff

The second *Keegel* factor is whether a set-aside would prejudice the plaintiff. The plaintiff claims that a set-aside would be prejudicial because "Angola may continue to do nothing, provide no compensation to AFGC for the loss of its substantial investment, and grant total impunity to the governmental actors and offices responsible for orchestrating the scheme to completely deprive AFGC of its investment in Angola." Pl.'s Reply at 8. What the plaintiff characterizes as "prejudice" is, however, at bottom no different from a mere delay in receiving the remedy sought. While understandable that the plaintiff wishes to have its allegedly-expropriated property returned with all deliberate speed, "prejudice" in this context requires showing some harm *beyond* mere delay in obtaining such relief. *See Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 130 (D.D.C. 2010) (in assessing whether the plaintiff would be prejudiced by vacating the entry of default, "'delay in and of itself does not constitute prejudice'" (quoting *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003))).

To the extent that the plaintiff claims prejudice because denial of its motion for default judgment may make a favorable judgment elusive in this matter is simply irrelevant to the prejudice analysis. "Detriment in the sense that plaintiff will be required to establish the merits of its claim does not constitute prejudice for purposes of setting aside an entry of default." *Loveday v. MetLife Inc.*, No. CV-16-00246-TUC-DTF, 2016 U.S. Dist. LEXIS 194596, at *5 (D. Ariz. Nov. 1, 2016) (citing *Accu-Weather Inc. v. Rueters, Ltd.*, 779 F. Supp. 801, 802 (M.D. Penn. 1991)); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224-25 (9th Cir. 2000) ("[Non-defaulting party] would have lost a quick victory … [b]ut such prejudice is insufficient to justify denial of relief" in setting aside a default judgment); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d

781, 785 (8th Cir. 1998) ("As numerous decisions make clear, prejudice may not be found from … the fact that the defaulting party will be permitted to defend on the merits."); *PNC Bank, Nat'l Ass'n v. Smith*, No. CIV S-10-1916 JAM EFB, 2011 U.S. Dist. LEXIS 146738, at *13-14 (E.D. Cal. Dec. 21, 2011) ("although setting aside the defaults would require plaintiff to prove its case, that does not amount to prejudice").

The lack of prejudice to the plaintiff therefore weighs in favor of granting Angola's set-aside motion.

### 3. *Angola's Defenses Are "Meritorious"*

The third *Keegel* factor is whether the alleged defense is "meritorious." Importantly, "meritorious" in this context does *not* mean "likelihood of success," *see Keegel*, 627 F.2d at 374. Rather—as the parties agree, *see* Pl.'s Reply at 9; Def.'s Reply at 2—defenses are "meritorious" for purposes of a set-aside motion "if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969)); *see also Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (A party seeking to set aside an entry of default "is not required to prove a defense, but only to assert a defense that it may prove at trial."). Angola's defenses satisfy this standard for merit.

Angola claims that the FSIA denies this Court subject-matter jurisdiction over the plaintiff's claims because the two FSIA exceptions to sovereign immunity relied upon by the plaintiff—"expropriation," *see* 28 U.S.C. § 1605(a)(3), and "commercial activity," *see id.* § 1605(a)(2)—are inapplicable, and the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts," *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); s*ee also* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of

14

[the FSIA]."); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002) ("The [FSIA] … confers immunity on foreign states in all cases that do not fall into one of its specifically enumerated exceptions.").

Briefly stated, Angola claims that FSIA's expropriation exception is inapplicable for three reasons, each of which is independently sufficient to defeat the exception. *See* Def.'s Reply at 3-9. First, Angola argues that established case law, *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, Case No. 13-7169, 2018 WL 3901246, at *30 (D.C. Cir. Aug. 7, 2018), "prohibits a US parent company from raising a claim for expropriation based upon the taking of property belonging to the US parent company's foreign subsidiary," Def.'s Reply at 4 (quoting Pl.'s Reply at 13 (citing *Helmerich & Payne Int'l Drilling Co.*, 2018 WL 3901246, at *30)). Here, the allegedly-seized properties belonged to Angolan subsidiaries of companies owned by AFGC, which, according to Angola, means that the alleged injuries cannot be credited to AFGC for purposes of the expropriation exception. Second, Angola argues that "expropriation" necessarily requires seizure by a *sovereign*, but Angola itself played no role in the alleged seizures, and the actions of those who allegedly seized the properties cannot be attributed to Angola. *See* Def.'s Reply at 7. Third, Angola argues that the expropriation exception is inapplicable because "the buildings alleged to have been expropriated are plainly not in the United States" and therefore "the required jurisdictional nexus with the United States is absent." Def.'s Reply at 9. Angola also argues that the FSIA's commercial activity exception is inapplicable because the alleged wrongful taking of a commercial enterprise, even if true, would not constitute "commercial activity" within the meaning of the FSIA, Def.'s Reply at 10 (citing *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 889-90 (D.C. Cir. 2017)), and because

the FSIA commercial activity exception requires some "direct effect" in the United States—of which there is none, *see* Def.'s Reply at 11.

Deciding the merits of Angola's jurisdictional defenses under the FSIA is unnecessary now, but Angola has plainly advanced a plausible defense "which, if proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374. This standard having been satisfied, the third *Keegel* factor weighs in Angola's favor to set-aside the default.

### C. As a Foreign Sovereign, Angola Is Entitled to a Presumption against Default Judgment

As noted, the *Keegel* factors are not exclusive. *See Gilmore*, 843 F.3d at 966. Other considerations, including especially a party's status as a sovereign nation, should be considered when deciding a Rule 55(c) motion. *See FG Hemisphere Associates, LLC*, 447 F.3d at 838 (highlighting that the court's interest in a foreign sovereign's "being able to assert defenses based on its sovereign status" should be considered when determining whether to grant relief from default judgment); *Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 130 (D.D.C. 2009) (describing "the established preference to avoid granting default judgment against foreign nations"); *Owens*, 374 F. Supp. 2d at 9 (noting "a strong presumption against the entry of default judgment against a foreign state that has appeared in the case and expressed a desire to contest the claims"). Angola is a sovereign nation and therefore deserves additional leeway now that it seeks to set aside the entry of default and defend itself in court.

### D. Failure to Comply with Local Civil Rule 7(g) Is Excused

Finally, AFGC urges the Court to grant its motion for default judgment because Angola has failed to comply with Local Civil Rule ("LCvR") 7(g), which requires that a motion to vacate an entry of default be "accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part." Pl.'s Reply at 9-10. Angola counters that the rule is

unclear in these circumstances because "Angola's responsive pleading will not be in the form of an 'answer' but rather a Motion to Dismiss the Complaint for lack of subject-matter jurisdiction under the FSIA and other threshold defenses." Def.'s Mem. at 1 n.1.

Indeed, LCvR 7(g) does not, by its plain text, contemplate the possibility that a defendant may wish to seek dismissal of the complaint rather than file a verified answer. This local requirement of a verified answer is not required under the Federal Rules of Civil Procedure. Despite the local rule's text, "[c]ourts routinely allow defendants to file a motion to dismiss in place of an answer despite a prior entry of default," and indeed the "Court is unaware of any decision in which a court has struck a motion to dismiss following an entry of default because the motion to vacate the default was filed without an answer." *Owens*, 374 F. Supp. 2d at 9 (citing *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 232 (D.C. Cir. 2003) and *Harris v. District of Columbia*, 159 F.R.D. 315, 317 (D.D.C. 1995)); *see also Reading v. United States*, 506 F. Supp. 2d 13, 19 (D.D.C. 2007).

In the instant case, Angola goes a step further by filing *neither* a verified answer *nor* a motion to dismiss along with its set-aside motion. Instead, Angola proposes that it "should be permitted to file its Motion to Dismiss the Complaint within 21 days of this Court's order" setting aside the Clerk's entry of default. Def.'s Mem. at 30. Angola's proposed schedule for filing a dismissal motion adds more delay to compound the delay already incurred by its belated appearance in this litigation, though other judges of this Court have allowed this approach. S*ee, e.g.*, *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 149 n.4 (D.D.C. 2016) (permitting Sudan, per its request, "to file an answer within seven business days of any order vacating the Default Judgment" (internal quotation marks omitted)); *Acree*, 658 F. Supp. 2d at

127-28 (setting aside entry of default where Iraq proposed a schedule for filing dispositive motions rather than filing a verified answer).

At any rate, the crux of LCvR 7(g) is to solicit from the defaulting party arguments that would be "sufficient to bar the claim in whole or in part," if the Court were to grant the set-aside motion and allow the litigation to proceed. Here, Angola's thorough briefing has made its arguments regarding sovereign immunity under the FSIA abundantly clear. Therefore, denying Angola's motion for failure to comply with LCvR 7(g) under these circumstances would not be in the interest of justice. Angola shall have fourteen days to file its proposed motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Default Judgment, ECF No. 23, is denied, and Angola's Motion to Set Aside Default, ECF No. 28, is granted. In addition, by December 17, 2018, Angola is directed to file any dispositive motion and the plaintiff is ordered to show cause as to why plaintiff's claims against the Individual Defendants, Francisco Higino Lopes Carneiro, Joao Maria de Sousa, Antonio Francisco Andrade, Miguel Kenehele Andrade, and Natasha Andrade Santos, should not be dismissed for lack of personal jurisdiction.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: December 3, 2018

_____

BERYL A. HOWELL
Chief Judge