# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFRICA GROWTH CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 17-2469 (BAH) |
| REPUBLIC OF ANGOLA, *et al.*, | Chief Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM OPINION

The plaintiff, Africa Growth Corporation ("AFGC"), a U.S.-based, publicly-listed corporation which, through its subsidiaries, builds and manages apartments in Angola's capital city, Luanda, instituted this suit against three Angolan government officials and the Republic of Angola to recover damages for an alleged series of brazen fraudulent actions culminating in the outright seizure and occupation of AFGC's properties by the three individual defendants: Angolan Army General António Francisco Andrade ("General Andrade"), his son, Angolan Army Captain Miguel Kenehele Andrade ("Captain Andrade"), and daughter, Angolan State Prosecutor Natasha Andrade Santos ("Prosecutor Andrade") (collectively, "Andrade Defendants").[1] Angola has filed a Motion to Dismiss, ECF No. 42, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that it is immune from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*[2] AFGC

---

[1] AFGC initially sought to bring claims against two additional individuals, Francisco Higino Lopes Carneiro and João Maria de Sousa, but claims as to these individuals were voluntarily dismissed. *See* Pl.'s Response to Order to Show Cause at 7, ECF No. 41 (requesting dismissal); Minute Order (Jan. 8, 2019).

[2] Angola also argues that dismissal is proper under the doctrine of *forum non conveniens*, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and by application of the act of state doctrine, but these additional bases for dismissal are not addressed since the case is resolved on alternative jurisdictional grounds. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) ("In order to preserve the full scope of [sovereign] immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as

1

subsequently filed a Motion for Voluntary Dismissal Without Prejudice ("Mot. Vol. Dismissal"), ECF No. 67, to dismiss only the claims against Angola, claiming that Angola and AFGC had "negotiated and freely entered into a settlement of all claims," *id.* at 1, for alleged breach of which AFGC has brought a separate action against Angola in the Southern District of Florida, *see* Mot. Vol. Dismissal, Ex. A, Complaint, *Africa Growth Corporation v. Republic of Angola*, Case No. 1:19-cv-21995-KMW (S.D. Fla. May 16, 2019), ECF No. 67-2. For the reasons set forth below, Angola's motion to dismiss for lack of subject matter jurisdiction is granted, and AFGC's motion for voluntary dismissal without prejudice is denied as moot.[3]

## I. BACKGROUND

The factual allegations central to this case were outlined in the Court's Memorandum Opinion denying the plaintiff's Motion for Default Judgment, ECF No. 23, and granting Angola's Motion to Set Aside Default, ECF No. 28, *see Africa Growth Corporation v. Republic of Angola* (*AFGC I*), No. 17-cv-2469 (BAH), 2018 WL 6329453 (D.D.C. Dec. 3, 2018), and thus is only briefly summarized here.

AFGC operates in Angola through a series of subsidiaries incorporated in countries other than the United States.[4] The Angolan apartment buildings named Isha 1, Isha 2, Isha 2.5, and

---

early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" (quoting *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990))); *Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988) ("[T]he act of state doctrine . . . should not be reached if this case is in fact beyond the proper jurisdiction of [the] Court by reason of the FSIA.").

[3] AFGC's Opposition to Angola's Motion to Dismiss "respectfully asks that the Court consider ordering limited jurisdictional discovery vis-à-vis AFGC and Angola for the purpose of further verifying and establishing allegations through proof, which shall enable the Court to make its determination regarding the exceptions to sovereign immunity and resulting jurisdiction under the FSIA." Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 32, ECF No. 44. Jurisdictional discovery in this context is appropriate "'only to verify allegations of specific facts crucial to an immunity determination.'" *Nyambal v. IMF*, 772 F.3d 277, 281 (D.C. Cir. 2014) (quoting *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)). Here, however, "even assuming that [Angola] engaged in all of the conduct alleged in the complaint, the [FSIA exceptions] would not apply," *Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005), rendering the requested opportunity for discovery futile.

[4] AFGC owns the Bermuda company Africa International Capital Ltd. ("AIC"), which in turn owns the British Virgin Islands company, ADV Holding Ltd. ("ADV"), which in turn owns the Angolan company AGPV

Pina, Compl. ¶¶ 27–29, ECF No. 1, allegedly seized by the Andrade Defendants, are owned and operated by AFGC's Angolan subsidiaries, *see AFGC I*, 2018 WL 6329453, at *1. Allegedly, "[u]nder color of his official position within the Angolan government," Compl. ¶ 41, the individual defendant General Andrade used both threats of violence, *id.* ¶¶ 41–45, and fraudulent Powers of Attorney, *id.* ¶ 35, to appoint himself as the director and General Manager of AFGC's three Angolan subsidiaries, AGPV, Illico, and Maximilio, in August 2017, *id.* ¶ 49. The individual defendant Prosecutor Andrade allegedly used her official position as a prosecutor to bring "a patently frivolous, false, baseless, and abusive criminal claim against various AFGC representatives," *id.* ¶ 62, "stat[ed] that she would have [an AFGC representative] killed," *id.* ¶ 63, and "facilitated the fraudulent transfer of the surface rights to [AFGC's properties] into her own name by personally appearing at the Angolan Property Registry and ordering that the change be made by and through a transfer of title," *id.* ¶ 97. The defendant Captain Andrade allegedly "threatened the safety of" AFGC's accountants in Angola, *id.* ¶ 108, instructing them "to send all the corporate records" to the Andrade Defendants' "personal accountant," *id.* ¶ 106, and "sent a false and defamatory complaint against AFGC to the Chairman of the SEC," *id.* ¶¶ 67–68, "aimed at discrediting and undermining AFGC and its shareholders with respect to its investment in Angola," *id.* ¶ 146(b). Thus, with limited exception, all of the conduct alleged in the complaint took place in Angola, all of the individual defendants are Angolan nationals residing in Angola, and all of the disputed property is located in Angola.

---

Lda. ("AGPV"), which is the parent company of two other Angolan companies, Illico Lda. ("Illico") and Maximilio Lda. ("Maximilio"). Pl.'s Opp'n at 3 n.3.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject matter jurisdiction over his claim. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In evaluating subject matter jurisdiction, the court, when necessary, may "undertake an independent investigation to assure itself of its own subject matter jurisdiction," *Settles v. U.S.*

*Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)), and consider "facts developed in the record beyond the complaint," *id. See also Herbert*, 974 F.2d at 197 (concluding that in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). To do so, "the district court may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Belhas v. Ya'Alon*, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (examining materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that courts may consider materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

### B. The Foreign Sovereign Immunities Act

Under the FSIA, a foreign state and its political subdivisions, agencies, and instrumentalities are presumed to be immune from the jurisdiction of the United States courts. *See TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 299 (D.C. Cir. 2005) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)); *see also* 28 U.S.C. § 1604. The "presumption is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605–07 applies." *TMR Energy*, 411 F.3d at 299.

The FSIA's commercial activity exception sets out, in three separate clauses, three circumstances under which a foreign state is not "immune from the jurisdiction of courts of the United States," 28 U.S.C. § 1605(a)—when "the action is based upon" (1) "a commercial activity carried on in the United States by the foreign state," (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," or (3) "an act

5

outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States," *id.* § 1605(a)(2). "[C]ommercial activity" is "a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d). An activity's "commercial character" is "determined by reference to the nature of the course of conduct or particular transaction or act, rather than . . . to its purpose." *Id.* A foreign state's acts are "commercial" within the FSIA's meaning "when a foreign government acts, not as regulator of a market, but in the manner of a private player within that market." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). In other words, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives," but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *Id.* (emphasis in original) (citation and internal quotation marks omitted). The Supreme Court has explained that "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015); *see also Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017) ("[A] court's jurisdiction under the Foreign Sovereign Immunities Act turns on the 'gravamen,' or 'essentials,' of the plaintiff's suit." (quoting *Sachs*, 136 S. Ct. at 395–97)).

The FSIA's expropriation exception requires that "(1) 'rights in property are at issue;' (2) 'those rights were taken in violation of international law;' and (3) 'a jurisdictional nexus [exists] between the expropriation and the United States.'" *Nemariam v. Federal Democratic Republic of Ethiopia*, 491 F.3d 470, 475 (D.C. Cir. 2007) (alteration in original) (quoting *Peterson v. Royal Kingdom of Saudi Arabia*, 332 F. Supp. 2d 189, 196–97 (D.D.C. 2004), *aff'd*, 416 F.3d 83 (D.C.

Cir. 2005)). The necessary "jurisdictional nexus is established if: (a) the property 'is present in the United States in connection with a commercial activity carried on in the United States by the foreign state' or (b) the property 'is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in engaged in a commercial activity in the United States.'" *Id.* at 475 (quoting 28 U.S.C. § 1605(a)(3)).

### III.  DISCUSSION

AFGC argues that both the "commercial activity" and the "expropriation" exceptions to sovereign immunity under the FSIA apply to this case. Neither exception, however, is supportable here.

#### A.  The Commercial Activity Exception Is Inapplicable

The FSIA's commercial activity exception abrogates sovereign immunity where an "action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "The [FSIA's] 'based upon' inquiry . . . first requires a court to 'identify the particular conduct on which the plaintiff's action is 'based.'" *Sachs*, 136 S. Ct. at 395 (quoting *Nelson*, 507 U.S. at 356). Identifying the "'particular conduct'" means "looking to the 'basis' or 'foundation' for a claim, 'those elements . . . that, if proven, would entitle a plaintiff to relief,' and 'the gravamen of the complaint.'" *Id.* (ellipsis in original) (quoting *Nelson*, 507 U.S. at 357). Even where an action is properly based upon commercial activity of the foreign state abroad, the plaintiff must further show that the act caused a "direct effect in the United States," 28 U.S.C. § 1605(a)(2), meaning the effect "follows 'as an immediate consequence of the defendant's . . . activity.'" *Weltover*, 504 U.S. at 618 (ellipsis in original); *see also id.* at 619 (holding that Argentina's unilateral rescheduling of the maturity dates for

7

bonds it issued, where New York was "the place of performance for Argentina's ultimate contractual obligations," had a direct effect in the United States for purposes of the FSIA).

### 1. *AFGC's Claims Are Not "Based Upon" Commercial Activity*

The gravamen of the instant claims against Angola is that Angola "permitted the [Andrade Defendants] to utilize their official title[s] and rank[s] to effect the unlawful taking of [AFGC's assets]," Compl. ¶ 130, and that "AFGC has been denied fair and due process of law in Angola in its attempts to bring the [Andrade Defendants] to justice and in its attempts to recover [its assets]," *id.* ¶ 135. At bottom, AFGC wishes for Angola to enforce the rule of law: to prosecute the Andrade Defendants' misdeeds and to make the corporate entity whole again. Even taken as true, these allegations fail to satisfy the commercial activity exception, as they "describe abuses of official power for corrupt ends that could not be undertaken by private parties in a marketplace." *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 111 (D.D.C. 2012); *see also Nelson*, 507 U.S. at 362 ("[S]uch acts as legislation, or the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own name. They can be performed only by the state acting as such." (alteration in original) (quoting Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*, 28 Brit. Y. B Int'l L. 220, 225 (1952))).

Stretching the commercial activity exception to fit its jurisdictional needs, AFGC emphasizes the commercial "nature" of this suit in broad strokes, describing the action as "based upon activities undertaken in furtherance of securing the ownership, possession, use, enjoyment, and ability to derive economic value from a commercial enterprise," Pl.'s Opp'n at 10, and as about "[o]wnership of real property, and the operation, maintenance and leasing thereof, and generation of revenue," *id.*, "activities that are commercial in nature," *id.* Yet, the fact that the asset allegedly taken is "a commercial enterprise," *id.*, is entirely beside the point. "The key inquiry in determining whether particular conduct constitutes commercial activity is not to ask

8

whether its purpose is to obtain money, but rather whether it is 'the sort of action by which private parties can engage in commerce.'" *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (quoting *Nelson*, 507 U.S. at 362); *see also Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988) ("Even if a transaction is partly commercial, jurisdiction will not obtain if the cause of action is based on a sovereign activity."). Here, the *conduct* for which AFGC seeks to hold Angola liable is for failure to regulate effectively the exercise of government agents' power and to provide "due process of law," Compl. ¶ 135, which is quintessentially sovereign conduct not falling within the commercial activity exception. *See Nelson*, 507 U.S. at 362 ("Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce.").

None of the cases cited by AFGC support a finding that the commercial activity exception applies. Oddly, AFGC cites to *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), without mentioning that the Supreme Court in *Nelson* and *Sachs* subsequently limited *Siderman*'s "overbroad interpretation of 'based upon,'" *de Csepel v. Republic of Hungary* (*de Csepel I*), 169 F. Supp. 3d 143, 158 n.5 (D.D.C. 2016) (citing *Nelson,* 507 U.S. at 356–63 and *Sachs*, 136 S. Ct. at 395–97)), raising significant question about the continued precedential value of that case. *See also Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 30 n.5 (D.D.C. 2013) ("[*Siderman*] was decided before the Court defined the term 'based upon' in *Nelson*."). Indeed, in *Siderman,* "Argentina's expropriation of [a] hotel was commercial activity where [the] government generated revenue from U.S. tourists and also paid for advertising in the United States," Pl.'s Opp'n at 9 n.4, but post-*Nelson*, this activity would not satisfy the commercial activity exception because the 'gravamen' of *Siderman*'s claims were "that their family business was stolen from them by the military junta that took over the

9

Argentine government in 1976," *Siderman*, 965 F.2d at 723. As the D.C. Circuit more recently, post-*Nelson*, explained, a plaintiff "cannot transform the initial expropriation into commercial activity," because otherwise "almost any subsequent disposition of expropriated property could allow the sovereign to be haled into a federal court under FSIA." *Rong v. Liaoning Province Government*, 452 F.3d 883, 889–90 (D.C. Cir. 2006).

AFGC also relies on *Nnaka v. Federal Republic of Nigeria*, 238 F. Supp. 3d 17, 27–28 (D.D.C. 2017), as "concluding [that a] foreign state's retainer agreement with [a] U.S. attorney was [the] type of commercial action a private party could perform and constituted commercial activity within the meaning of the FSIA," Pl.'s Opp'n at 9–10. This case is wholly inapposite. In *Nnaka*, the commercial activity exception applied because "the gravamen of the suit," as stated "loudly and clearly" by the plaintiff, was that, contrary to the alleged terms of the retainer agreement, "Nigeria wronged Nnaka and caused him great injury in 2014 when its then-Attorney General told the U.S. government by letter that Nnaka did not have authority to represent Nigeria in the U.S. government's pending asset forfeiture action." *Nnaka*, 238 F. Supp. 3d at 28. Thus, the crux of the claims in *Nnaka* was breach of contract, unjust enrichment, and related claims arising out of the plaintiff's direct contract with Nigeria, where, by contrast, here, AFGC seeks to hold Angola liable for failure of due process in the taking of its property—acts which are not commercial in nature.

2. *Angola Did Not Cause a "Direct Effect" in the United States*

AFGC argues that "specific commercial activities undertaken by Angola and/or the Andrade Defendants" have had a direct effect in the United States, "includ[ing], without limitation," Captain Andrade sending a letter "with false allegations" to the SEC, sending the same letter to U.S.-based institutional investors to harm AFGC's "ongoing capital raising efforts," advertising and marketing rental units to U.S. customers, and by their overall conduct,

10

harming AFGC stock and bond holders. Pl.'s Opp'n at 12, 13 n.7. These alleged acts, however, do not amount to a 'direct effect' in the United States. First, any losses AFGC stock and bond holders in the United States suffered are clearly insufficient to meet the "direct effect" prong of the expropriation exception. *See Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1184 (D.C. Cir. 2013) ("If a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity would in large part eviscerate the FSIA's provision of immunity for foreign states." (quoting *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 34 (2nd Cir. 1993))). Similarly, AFGC cannot rely on "reputational harm" from Captain Andrade's letter to the SEC and U.S. investors to show a direct effect in the United States. *See id.* at 1183–84 ("[R]eputational harm '(assuming it is not too speculative to be considered an effect at all) is too remote and attenuated to satisfy the 'direct effect' requirement of the FSIA.'" (quoting *Weltover*, 504 U.S. at 618)). Finally, AFGC does not explain how the marketing of rental units "to US customers via the website booking.com," Pl.'s Opp'n at 12, would be legally sufficient to constitute a direct effect in the United States, nor could it, because, as discussed *supra*, the marketing of the allegedly seized properties is not the act forming the "gravamen of the suit" upon which AFGC's action is based. Instead, the underlying illegality of, and ineffective recompense for, the seizure forms the basis of the suit. *See Weltover*, 504 U.S. at 618 ("[A]n effect is 'direct' if it follows as an immediate consequence of the defendant's . . . activity." (ellipsis in original) (citation and internal quotation marks omitted)).

### B. The Expropriation Exception is Inapplicable

AFGC's reliance on the expropriation exception fares no better. Not only has AFGC failed to show the requisite jurisdictional nexus with the United States, AFGC has also failed to show the requisite taking in violation of international law.

11

1.  *There Is No Jurisdictional Nexus with the United States*

In order for jurisdiction to exist under the expropriation exception to the FSIA, "property taken in violation of international law" must have a "jurisdictional nexus" with the United States. Either (1) the "property taken or any property exchanged for such property *is present in the United States in connection with a commercial activity* carried on in the United States by the foreign state;" or (2) the "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." 28 U.S.C. 1605(a)(3) (emphasis added); *see also Schubarth v. Federal Republic of Germany*, 891 F.3d 392, 401 (D.C. Cir. 2018); *de Csepel v. Republic of Hungary* (*de Csepel II*), 859 F.3d 1094, 1101 (D.C. Cir. 2017); *Simon v. Republic of Hungary*, 812 F.3d 127, 141–42 (D.C. Cir. 2016). AFGC asserts that the first jurisdictional nexus applies in this case, citing attenuated reasons that fail to persuade and have no legal authority.

AFGC posits that Angola has taken "property" "present in the United States" in satisfaction of the jurisdictional nexus requirement by allegedly playing a role in the seizure of assets *in Angola* that constitute "nearly all of the assets and profits of a US corporation." Pl.'s Opp'n at 19. In so doing, AFGC reasons that Angola has "assumed the role of owners and shareholders of AFGC," thus effectively taking over a U.S. corporation "factually present in the United States." *Id.* As support, AFGC offers no evidence that the FSIA was ever intended to operate in this roundabout way, nor any legal precedent, or even scholarship, to support such an expansive view of a U.S. nexus. Adopting AFGC's approach would, for example, seemingly permit plaintiffs the world over to establish jurisdiction in U.S. courts for foreign sovereigns' local expropriations simply by incorporating a parent company in the United States, regardless of whether any of the actual property at issue, or property exchanged for such property, is or ever

was present in the United States. This approach, at bottom, attempts to substitute the location of incorporation of the parent company for the location of property taken, and is wholly inconsistent with the plain text of the FSIA.

AFGC further avers that the jurisdictional nexus requirement has been satisfied (1) by Angola having "offered and marketed sovereign bonds to qualified institutional buyers in the United States," which bonds Angola will repay with "the proceeds of AFGC's expropriated property," *id.*; and (2) by the appearance of "rental advertisements of units" allegedly seized by Angola "on the website booking.com," which website is owned by a Delaware corporation and "specif[ies] that all rental transactions will occur in US dollars," indicating, according to the plaintiff, "that the units are being marketed to US customers," *id.* AFGC failed to assert these facts regarding Angolan bonds or booking.com listings in its complaint, and thus they need not be assumed to be true for purposes of deciding the defendant's motion to dismiss.

At the same time, "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidence in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal for Underground Expansion*, 333 F.3d at 198 (quoting *Herbert*, 974 F.2d at 197).[5] Angola disputes these newly proffered factual assertions as

---

[5] AFGC "requests leave to replead certain facts and allegations in accordance with Rule 15(a)," if "the Court finds it necessary for AFGC to plead previously undisclosed factual developments in this case that surfaced after the filing of the Complaint." Pl.'s Opp'n at 32. Setting aside that this request is not properly made since AFGC has filed no motion to amend the complaint "accompanied by an original of the proposed pleading as amended," D.D.C. Local Civil Rule 7(i), the allegations sought to be plead, namely, Angola's marketing of bond offering to U.S. investors and the marketing of AFGC's properties "for rental in the United States," Pl.'s Opp'n at 32, would not create jurisdiction under either the commercial activity or the expropriation exceptions of the FSIA, and therefore amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (suggesting that denial of a motion to amend is not an abuse of discretion where amendment would be futile); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (same).

"baseless" and "cryptic." *See* Def.'s Reply at 13–14. Indeed, these proffered allegations, turn, at best, on speculation about future events. AFGC does not allege that these forms of "property taken or any property exchanged for such property [are]" currently present in the United States, 28 U.S.C. § 1605(a)(3), as the FSIA requires. Thus, consideration of these disputed facts for purposes of the jurisdictional nexus requirement would be inappropriate, and even if considered, they would be insufficient to meet the statutory requirement that property be located in the United States.

### 2. *AFGC's Property Was Not Taken in Violation of International Law*

The parties also dispute whether AFGC's property was taken in violation of international law, as is required by the expropriation exception. AFGC concedes that it does not itself own the properties that were allegedly seized since those properties are held by foreign subsidiaries, three levels removed from AFGC. *See* Pl.'s Opp'n at 3. As the D.C. Circuit has made clear, the "domestic-takings rule bars" a U.S. parent company "from basing an expropriation claim on [a state's] seizure of" property owned by its local subsidiary. *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela* (*Helmerich IV*), 743 F. App'x 442, 453 (D.C. Cir. 2018). This is so because the expropriation exception's plain language requires a taking "in violation of international law," 28 U.S.C. § 1605(a)(3), and international law prohibits only the taking of "'the property of *a national of another state*,' unlike the property of its own national, without compensation," *Helmerich IV*, 743 F. App'x at 453 (quoting Restatement (Third) of the Foreign Relations Law of the United States § 712(1)(c)). Accordingly, "the proper place" for a foreign subsidiary "to assert its property rights" is in the foreign nation's own courts. *Id.* at 448.

One caveat to this rule is where the domestic takings is so severe as to constitute a taking of the entire foreign subsidiary, for example, by "commendeer[ing] all of [the subsidiary's] on-the-ground operations, leaving [it] with nothing but a nominal right to compensation that has

14

proven worthless in [the foreign sovereign's] courts." *Id.* at 455. In such a situation, the expropriated subsidiary corporation is itself the "property," which, having been taken from its parent company, violates international law. *See id.* at 455 (citing *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.* (*Helmerich III*), 137 S.Ct. 1312, 1318 (2017) (quoting 28 U.S.C. § 1605(a)(3))).

AFGC claims that, "similar to the facts in *Helmerich*," it has lost "control over the AFGC Angolan Subsidiaries that own and control the Angolan real and tangible property and the bank accounts associated with these entities," Pl.'s Opp'n at 17, thereby satisfying the requirement to have suffered some loss of property in violation of international law. This reasoning breaks down, however, because AFGC does not itself own the local Angolan subsidiaries, which instead are owned by the British Virgin Islands company ADV, which is owned by the Bermuda company AIC. Thus, the parent company that allegedly lost "ownership and control" of the local subsidiaries is not AFGC, but rather other AFGC subsidiaries incorporated in other jurisdictions. These foreign shareholders—not AFGC—suffered "the indirect expropriation of a shareholder's direct rights." *Helmerich IV*, 743 F. App'x at 454.

### C.    AFGC Has Not Pled Facts Attributing the Alleged Takings to Angola

In addition to the dispositive shortcomings explained *supra*, the conduct alleged by AFGC is simply not attributable to the sovereign nation of Angola, and thus reliance on the FSIA to establish jurisdiction fails for another reason. As previously explained in this case, natural persons cannot be "agenc[ies] or instrumentalit[ies]" under the FSIA, *see AFGC I*, 2018 WL 6329453, at *4 (citing *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010)), and AFGC has sued the Andrade Defendants in their personal capacities, *see* Compl. at 2–3. "'Officers sued in their personal capacity come to court as individuals,' . . . and the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017) (quoting *Hafer v. Melo*, 502

15

U.S. 21, 27 (1991)).  *See also Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 29 (D.D.C. 2007) ("When an officer is sued in his official capacity, it is usually as a means of suing the sovereign indirectly; where an officer is sued in his personal capacity, it seeks to hold him personally liable.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

To hold Angola liable for the alleged acts of the Andrade Defendants, AFGC must plead the elements of an agency relationship.  *See Kaiser Group Intern., Inc. v. World Bank*, 420 F. App'x 2, 5 (D.C. Cir. 2011) (affirming district court's dismissal for lack of subject matter jurisdiction because plaintiff had not pled an agency relationship making actions attributable to defendant World Bank); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("[T]he *plaintiff* bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship." (emphasis in original)).  As relevant here, AFGC must plead that Angola manifested a desire for the Andrade Defendants to act on its behalf.  *See* Restatement (Third) of Agency § 1.01.

While the complaint labels the Andrade Defendants as the "Angolan Government Illegal Agents," Compl. at 2–3, AFGC alleges no facts tending to establish an agency relationship between Angola and the Andrade Defendants.  After Angola challenged AFGC's characterization of the Andrade Defendants as agents of Angola, *see* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 12–13, ECF No. 42-1 (asserting that the Andrade Defendants' "acts are not attributable to Angola"); Decl. of Eduarda Rodrigues Neto, Angolan Deputy Attorney General ("Neto Decl.") ¶¶ 4–6, 10–13, ECF No. 42-3 (describing actions taken by Angola against the Andrade Defendants for their conduct, including the criminal prosecution of General Andrade and penalizing Prosecutor Andrade in a disciplinary action), AFGC had a burden of production to "present adequate supporting evidence" upon which the Court could conclude that

an agency relationship existed, *see Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 940 (D.C. Cir. 2008); *see also Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017); *Simon*, 812 F.3d at 147. AFGC has not done so. Thus, the Andrade Defendants' alleged conduct—the taking of AFGC's property through fraud and force—is not attributable to Angola for purposes of deciding Angola's motion to dismiss for lack of subject matter jurisdiction and cannot form the basis for abrogating Angola's immunity under the FSIA.

### D. AFGC Has Not Established Personal Jurisdiction over the Individual Defendants

Finally, although neither Angola's motion to dismiss, nor AFGC's motion to dismiss voluntarily, the claims against Angola address the jurisdictional bases for the claims against the Andrade Defendants, the Court must assure itself that personal jurisdiction may be exercised over these individual defendants before any default judgment against them may be granted. *See Mwani*, 417 F.3d at 6 ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."). AFGC originally served these individuals according to the procedure for service set out in the FSIA, but, as explained in the Court's earlier Memorandum Opinion, natural persons cannot be "agenc[ies] or instrumentalit[ies]" under the FSIA, *see AFGC I,* 2018 WL 6329453, at *4 (citing *Samantar,* 560 U.S. at 319), and AFGC was therefore required to serve the individual defendants according to the procedure set out in Fed. R. Civ. P. 4(f) for service on individuals in foreign countries, *id*. AFGC subsequently completed service of process on the individual defendants pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii). *See* Return of Service, ECF No. 62. After the period for filing an answer expired, AFGC filed an Affidavit for Default, ECF No. 65, and an Entry of Default, ECF No. 66, was docketed on April 18, 2019.

Proper service of process is, however, but one component of establishing personal jurisdiction, and on December 3, 2018, AFGC was directed to show cause as to why the instant claims against the individual defendants should not be dismissed for lack of personal jurisdiction. *See* Order (Dec. 3, 2018), ECF No. 37. Plaintiff's Response to Order to Show Cause ("Resp. Show Cause Order"), ECF No. 41, was wholly inadequate. AFGC states that personal jurisdiction is valid under the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), or, alternatively, Fed. R. Civ. P. 4(k)(2), which provides that for claims arising "under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws," *see* Pl.'s Resp. Show Cause Order at 5, but AFGC makes little effort to demonstrate why these bases for personal jurisdiction apply.

To establish general personal jurisdiction over an out-of-state defendant, a plaintiff must show that "each Defendant's contacts with the forum are 'continuous and systematic,' . . . such that due process is not offended by allowing a United States court to hale the defendant into the forum 'over any matter involving the defendant.'" *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 192–93 (D.D.C. 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984) and *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005)). By contrast, when asserting "specific jurisdiction over an out-of-state defendant who has not consented to suit there," due process "is satisfied if the defendant has 'purposefully directed his activities at residents of the forum,' . . . 'and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'" *Mwani*, 417 F.3d at 12 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Though not entirely clear, in citing to D.C. Code § 13-423(a)(1) and claiming that the Andrade Defendants "purposefully directed at this District" the "marketing of short-term residential rentals," Pl.'s Resp. Order Show Cause at 6, AFGC seemingly intends to argue that a finding of specific personal jurisdiction would be proper. It would not. To establish personal jurisdiction under D.C. Code § 13-423, or to satisfy constitutional due process for specific personal jurisdiction, the alleged injuries must "arise out of or relate to" the jurisdiction-specific activities. *See Mwani*, 417 F.3d at 12; *Johnson-Tanner v. First Cash Financial Services, Inc.*, 239 F. Supp. 2d 34, 37 (D.D.C. 2003) ("[D.C. Code Section 13-423(a)(1)] allows for jurisdiction to the fullest extent permissible under the Due Process Clause of the United States Constitution." (citing *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 455 (D.C. Cir. 1990))). Clearly, AFGC's alleged injuries with respect to its subsidiaries' real properties in Angola did not "arise out of" the Andrade Defendants' alleged conduct in the United States. *Cf. Dove v. United States*, No. 86-cv-0065, 1987 WL 18739, at *3 (D.D.C. Oct. 9, 1987) ("An act within the district will not confer jurisdiction if it is of 'minimal significance' to the transaction as a whole."); *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 564 (D.D.C. 1981) ("Exchange of letters and telephone communications with a party in the District of Columbia alone is not considered a jurisdictionally significant contact by District of Columbia courts."). Accordingly, AFGC has not pled facts that could establish personal jurisdiction over the Andrade Defendants and claims against them must be dismissed.

### E. AFGC's Motion for Voluntary Dismissal Without Prejudice

The parties disagree as a legal matter whether AFGC's motion to dismiss claims against Angola voluntarily without prejudice should be considered without first adjudicating Angola's motion to dismiss for lack for subject matter jurisdiction, *see* Def.'s Opp'n Pl.'s Mot. Voluntary Dismissal ("Def.'s Opp'n Vol. Dismissal") at 8–11, ECF No. 69; Pl.'s Reply Supp. Pl.'s Mot.

Voluntary Dismissal ("Pl.'s Reply Vol. Dismissal") at 4–7, ECF No. 71, especially where the question of a foreign sovereign's immunity from suit is at issue, *see* Def.'s Opp'n Vol. Dismissal at 10. This aspect of the parties' dispute, however, is now moot and AFGC's motion to dismiss voluntarily without prejudice claims against Angola is denied as moot. Absent subject matter jurisdiction, the claims against Angola must be dismissed with prejudice.

## IV. CONCLUSION

AFGC warns that "[d]ismissal of AFGC's claims before this Court will result in nothing short of AFGC's rights remaining unprotected and unenforced and its damages remaining uncompensated." Pl.'s Opp'n at 7. Any deficiency in the rule of law in Angola is regrettable, but AFGC's alleged losses in Angola do nothing to confer subject matter jurisdiction upon this Court. Therefore, for the foregoing reasons, Angola's Motion to Dismiss, ECF No. 42, is granted with prejudice. In addition, the claims against the individual defendants António Francisco Andrade, Miguel Kenehele Andrade, and Natasha Andrade Santos are dismissed, without prejudice, for lack of personal jurisdiction; and the plaintiff's Motion for Voluntary Dismissal, ECF No. 67, is denied as moot.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: July 19, 2019

_____

BERYL A. HOWELL
Chief Judge